**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

JOSE-NICOLAS OSBALDO, #R-72183,       )
                                      )
                    Plaintiff,        )
                                      )
        -vs-                          )       No.  15-964-JPG
                                      )
NATHAN BERRY, et. al.,                )
                                      )
                    Defendants.       )

<u>**DEFENDANTS' PARTIAL ANSWER AND AFFIRMATIVE DEFENSES**</u>

NOW COME Defendants, RICHARD HARRINGTON, ROBERT HUGHES, WILLIAM QUALLS, JUSTIN SNELL, JASON HART, MATTHEW PURDOM, NATHAN BERRY, and AIMEE LANG, by and through their attorney, Lisa Madigan, Attorney General for the State of Illinois, and for their Partial Answer and Affirmative Defenses to Plaintiff's Amended Complaint (Document 15), hereby state as follows:

**Introduction**

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Mr. Osbaldo's rights as secured by the United States Constitution.

**ANSWER: Defendants admit this action is brought pursuant to 42 U.S.C. §1983 but deny the claims have merit.**

2.      On February 5, 2014, Mr. Osbaldo was attacked and beaten by Defendants Berry and Qualls. While Mr. Osbaldo was handcuffed, Defendants Berry and Qualls punched Mr. Osbaldo in the head with closed fists, smashed his head into a concrete wall, punched him in the stomach, and kicked him in the torso and legs until he fell unconscious.

Defendants Snell and Purdom watched Mr. Osbaldo be beaten, and did nothing to intervene.

**ANSWER: Defendants deny the allegations in this paragraph.**

3.     Immediately following the attack, Mr. Osbaldo sought medical treatment for his injuries. Defendants Lang and Unknown Menard Physician failed to take his medical complaints seriously or provide him constitutionally adequate evaluation or treatment for his injuries.

**ANSWER: Defendants admit Plaintiff sought medical treatment on February 5, 2014. Defendants deny the remaining claims in this paragraph.**

4.     Defendants Berry and Qualls issued Mr. Osbaldo two disciplinary tickets and took him to segregation. During a disciplinary hearing five days later, Defendants Hughes, Hart, and Harrington failed to provide Mr. Osbaldo the due process of law to which he was entitled.

**ANSWER: Defendants Berry and Qualls admit they each drafted and submitted an Offender Disciplinary Report against the Plaintiff on February 5, 2014. Defendants admit Plaintiff was taken to segregation on February 5, 2014. Defendants admit Plaintiff appeared before the Adjustment Committee consisting of Defendants Hughes and Hart on February 10, 2014. Defendants admit the Adjustment Committee recommendations were sent to the Chief Administrative Officer for final determination. Defendants admit Defendant Harrington's designee signed the report on February 18, 2014. Defendants deny the remaining allegations in this paragraph.**

5.     Instead, they sentenced him to six month of segregation. During that six months, Mr. Osbaldo was forced to endure conditions that were deplorable and fell well

below the most minimal conditions guaranteed by the Eighth Amendment. Defendants Harrington and Butler were aware of these conditions but did nothing to remedy them.

**ANSWER: Defendants admit that the Adjustment Committee recommended discipline of six months in segregation from Plaintiff's two February 5, 2014, disciplinary tickets. Defendants deny Plaintiff was denied due process. Plaintiff's claims in Count V regarding conditions of confinement have been severed and, therefore, no response is necessary to the remaining claims in this paragraph. To the extent a response is necessary, those claims are denied.**

### Jurisdiction and Venue

6.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

**ANSWER: Defendants admit this Court has jurisdiction except to the extent Plaintiff's claims are barred by sovereign immunity and/or the Eleventh Amendment.**

7.    Venue is proper under 28 U.S.C. § 1391(b). On information and belief, one or more Defendants reside in this District, and a substantial portion of the events giving rise to the claims asserted herein occurred within this District.

**ANSWER: Defendants admit venue is proper except to the extent Plaintiff's claims are barred by sovereign immunity and/or the Eleventh Amendment.**

## Parties

8.     Plaintiff Jose-Nicolas Osbaldo is in the custody of the Illinois Department of Corrections (IDOC). At all times relevant to the events at issue in this case, Mr. Osbaldo was housed at Menard Correctional Center (Menard).

**ANSWER: Defendants admit the allegations in this paragraph.**

9.     At all times relevant to his involvement in this case, Defendant Nathan Berry was a correctional officer at Menard, and an employee of the IDOC. Defendant Berry is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Berry was acting under color of law and within the scope of his employment with the IDOC.

**ANSWER: Defendants admit the allegations in this paragraph, but deny the allegations against them.**

10.     At all times relevant to his involvement in this case, Defendant William Qualls was a correctional lieutenant at Menard, and an employee of the IDOC. Defendant Qualls is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Qualls was acting under color of law and within the scope of his employment with the IDOC.

**ANSWER: Defendants deny Defendant Qualls was a correctional lieutenant at all times relevant to the claims in this case. Defendants, however, admit Defendant Qualls was employed at Menard Correctional Center at all times relevant to the claims in this case. Defendants deny the allegations against them.**

11.     At all times relevant to his involvement in this case, Defendant Justin Snell was a correctional sergeant at Menard, and an employee of the IDOC. Defendant Snell is

sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Snell was acting under color of law and within the scope of his employment with the IDOC.

**ANSWER: Defendants deny Defendant Snell was a correctional sergeant at all times relevant to the claims in this case. Defendants, however, admit Defendant Snell was employed at Menard Correctional Center at all times relevant to the claims in this case. Defendants deny the allegations against them.**

12.     At all times relevant to his involvement in this case, Defendant Matthew Purdom was a correctional officer at Menard, and an employee of the IDOC. Defendant Purdom is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Purdom was acting under color of law and within the scope of his employment with the IDOC.

**ANSWER: Defendants admit the allegations in this paragraph, but deny the allegations against them.**

13.     At all times relevant to his involvement in this case, Defendant Robert Hughes was a shift supervisor at Menard, a member of Menard's Adjustment Committee, and an employee of the IDOC. Defendant Hughes is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Hughes was acting under color of law and within the scope of his employment with the IDOC.

**ANSWER: Defendants admit Defendant Hughes was a Major employed at Menard Correctional Center and that he served on the Adjustment Committee on February 10, 2014, which heard Plaintiff's disciplinary tickets at issue. Defendant**

Hughes admits acting under color of law and within the scope of his employment, but denies the allegations against him.

14.     At all times relevant to his involvement in this case, Defendant Jason Hart was a correctional officer at Menard, a member of Menard's Adjustment Committee, and an employee of the IDOC. Defendant Hart is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Hart was acting under color of law and within the scope of his employment with the IDOC.

**ANSWER: Defendants admit Defendant Hart was a Correctional Officer employed at Menard Correctional Center and that he served on the Adjustment Committee on February 10, 2014, which heard Plaintiff's disciplinary tickets at issue. Defendant Hart admits acting under color of law and within the scope of his employment, but denies the allegations against him.**

15.     At all times relevant to his involvement in this case, Defendant Richard Harrington was the warden at Menard, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Menard. Defendant Harrington is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Harrington was acting under color of law and within the scope of his employment with the IDOC.

**ANSWER: Defendants admit the allegations in this paragraph, but deny the allegations against them.**

16.     At all times relevant to her involvement in this case, Defendant Kimberly Butler was the warden at Menard, an employee of the IDOC, and was responsible for the implementation, oversight, and supervision of policies and practices at Menard. Defendant

Butler is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Butler was acting under color of law and within the scope of her employment with the IDOC.

**ANSWER: Defendants deny Kimberly Butler is a defendant in this action; therefore, no response to this paragraph is necessary.**

17.     At all times relevant to her involvement in this case, Defendant Aimee Lang was a correctional medical technician at Menard, and an employee of the IDOC. Defendant Lang is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Lang was acting under color of law and within the scope of her employment with the IDOC.

**ANSWER: Defendants admit the allegations in this paragraph, but deny the allegations against them.**

18.     At all times relevant to his involvement in this case, Defendant Unknown Menard Physician was a medical doctor at Menard, an employee of Wexford, and was responsible for the implementation, oversight, and supervision of policies and practices regarding medical care at Menard. Defendant Unknown Menard Physician is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Unknown Menard Physician was acting under color of law and within the scope of his employment.

**ANSWER: Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

19.     Defendant Wexford Health Sources, Inc. (Wexford) is a corporation headquartered in Pennsylvania transacting business in Illinois. Wexford, pursuant to a

contract with the State of Illinois, is a healthcare provider for IDOC prisons throughout the State. At all times relevant to the events at issue in this case, Wexford was responsible for the implementation, oversight, and supervision of policies and practices regarding medical care at Menard and the IDOC generally. As an agent of the IDOC, Wexford was at all times relevant to the events at issue in this case acting under color of law by and through its lawful agents, including Defendant Unknown Menard Physician.

**ANSWER: This paragraph is not directed to the Defendants herein; therefore, no response is required.**

### Allegations

The Beating

20.     On February 5, 2014, Mr. Osbaldo was returning from lunch when he found his cell locked. Correctional officers told Mr. Osbaldo and his cellmate, Edgar Diaz, to go down the stairs to the first floor of the cellhouse. They complied, and were placed in an empty holding cell.

**ANSWER: Defendant Snell, Berry, and Qualls admit that on February 5, 2014, the Plaintiff and his cellmate were placed in the holding cell during a routine shakedown of their cell. The Defendants lack knowledge sufficient to either admit or deny the remaining allegations in this paragraph.**

21.     As Mr. Osbaldo and Mr. Diaz were waiting in the holding cell, prisoners from another gallery in Mr. Osbaldo's cellhouse passed by the holding cell on their way to lunch. As he was passing by the holding cell, one of the prisoners said to Mr. Osbaldo in Spanish: "You good?" Mr. Osbaldo replied in Spanish that he was good.

**ANSWER: Defendants Snell, Berry, and Qualls admit that while Plaintiff and his cellmate were being held in the holding cell on February 5, 2014, Plaintiff and his cellmate spoke to inmates in the inmate line being escorted past the holding tank. Defendants Snell, Berry, and Qualls lack knowledge sufficient to either admit or deny the remaining allegations. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

22.     Defendants Barry, Qualls, Snell, and Purdom were all present at or near the holding cell. Defendant Qualls, upon hearing Mr. Osbaldo's conversation with the passing prisoner, yelled at Mr. Osbaldo: "Shut the fuck up and face the wall!" Mr. Osbaldo complied. Defendant Qualls told Mr. Osbaldo to sit down, but Mr. Osbaldo told the officer it was too cold.

**ANSWER: Defendants Barry, Qualls, and Snell admit they were present on February 5, 2014, at times when the Plaintiff was in the holding tank and admit the Plaintiff was talking to inmates walking by the holding tank. Defendants Barry, Qualls, and Snell admit Plaintiff was directed to stop interfering with the line movement and to sit down. Defendants Barry, Qualls, and Snell deny the remaining allegations in this paragraph. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

23.     Officers yelled at both Mr. Diaz and Mr. Osbaldo to "cuff up." Both men complied, putting their hands together behind their backs, turning their backs to the officers, and walking backwards towards the bars of the cell so that the officers could easily handcuff the men. An officer handcuffed Mr. Diaz and led him out of the holding cell.

**ANSWER: Defendants Barry, Qualls, and Snell admit the Plaintiff and his cellmate were cuffed and taken to segregation on February 5, 2014. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

24.     Defendants then handcuffed Mr. Osbaldo and led him out of the holding cell. Defendant Qualls hit Mr. Osbaldo with a closed fist on the right side of his jaw, causing Mr. Osbaldo to fall to the ground. One of the officers picked Mr. Osbaldo off the ground and told Defendant Qualls to move it out of the hallway.

**ANSWER: Defendants Barry, Qualls, and Snell admit Plaintiff was cuffed and taken to segregation on February 5, 2014. Defendants Barry, Qualls, and Snell deny the remaining allegations in this paragraph. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

25.     Defendants Berry and Qualls dragged Mr. Osbaldo to a shower in the cellhouse. Upon entering the shower area, Defendant Berry smashed Mr. Osbaldo's head violently into the concrete wall. Mr. Osbaldo began bleeding from the mouth. Defendants Berry and Qualls punched Mr. Osbaldo in the head, back, and stomach as Mr. Osbaldo fell to the ground and curled up into a fetal position.

**ANSWER: Defendants deny the allegations in this paragraph.**

26.     The beating continued as Defendants Berry and Qualls continued to punch and kick Mr. Osbaldo. Mr. Osbaldo begged them to stop and began gasping for air. Rather than stop attacking him, Defendant Qualls mimicked Mr. Osbaldo's pleas and gasps, and told him: "Shut the fuck up!"

**ANSWER: Defendants deny the allegations in this paragraph.**

27.     Defendants Berry and Qualls continued to beat Mr. Osbaldo until he lost consciousness. When Mr. Osbaldo regained consciousness, Mr. Berry picked Mr. Osbaldo up by lifting his shoulder—Mr. Osbaldo remained handcuffed during the entire attack—and violently dragged him out of the cellhouse.

**ANSWER: Defendants deny the allegations in this paragraph.**

28.     Defendants Snell and Purdom were present during all or part of the attack, and saw Defendants Berry and Qualls beat Mr. Osbaldo. They did nothing to intervene.

**ANSWER: Defendants deny the allegations in this paragraph.**

<u>Denial of Medical Attention</u>

29.     Defendant Qualls dragged Mr. Osbaldo out of his housing unit and toward the segregation housing unit at Menard. Mr. Osbaldo was injured so badly that he was unable to walk with the officers and fell to the ground. A correctional officer from one of the towers overlooking the walkway from Mr. Osbaldo's cell house to segregation told Defendant Qualls to take Mr. Osbaldo to the healthcare unit; Defendant Qualls refused.

**ANSWER: Defendants deny the allegations in this paragraph.**

30.     Mr. Osbaldo was instead taken to another cell house, where he encountered Defendant Lang. Mr. Osbaldo communicated to Defendant Lang the beating that he had just suffered and the pain he was experiencing. Defendant Lang refused to perform an adequate evaluation of Mr. Osbaldo, refused to treat him, and refused to refer him to a doctor for further medical attention. Instead, Defendant Lang left. Mr. Osbaldo was taken to a cell in the segregation unit at Menard.

**ANSWER: Defendants admit Plaintiff saw Defendant Lang upon arrival to the North 2 cell house. Defendant Lang denies the remaining allegations in this**

**paragraph. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

31.     As a result of the beating, Mr. Osbaldo suffered severe pain in his head, jaw, ribs, and left side. Mr. Osbaldo had an abrasion on his forehead, and he could not open or shut his mouth properly because of his jaw. This prevented Mr. Osbaldo from being able to eat or drink, and the pain in his jaw was so severe that he could not sleep. In addition, a few days after the attack, Mr. Osbaldo noticed a deep bruise and two tender and painful bulges that had appeared on his left side below his belly button.

**ANSWER: Defendants deny causing any injuries to the Plaintiff and deny the allegations in this paragraph.**

32.     On February 7, 2014, Mr. Osbaldo saw a nurse who was visiting his housing unit in segregation. Mr. Osbaldo told the nurse about the beating he had suffered two days earlier and the injuries he had sustained as a result. The nurse noted the deformity, swelling, and limited range of motion of Mr. Osbaldo's jaw, as well as his severe pain and inability to eat. The nurse referred Mr. Osbaldo to dentist for evaluation and treatment, and prescribed Mr. Osbaldo Tylenol and a cold pack in the meantime.

**ANSWER: Defendants admit Plaintiff's medical records indicate he saw a nurse on February 7, 2014, and was referred to the dentist. Defendants lack knowledge sufficient to either admit or deny the remaining allegations in this paragraph, but deny causing any injury to the Plaintiff.**

33.     The dentist prescribed Mr. Osbaldo with a soft diet and pain medication. He told Mr. Osbaldo that his jaw would heal and that the clicking would subside as the swelling

went down. He told Mr. Osbaldo to hold a towel with hot water on his jaw for 10-15 minutes several times per day.

**ANSWER: Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph, but deny causing any injury to the Plaintiff.**

34.     On February 28, 2014, Mr. Osbaldo saw the same nurse he had seen three weeks earlier on February 7. He told her about the bruise and the painful and tender bulges on his left side below his belly button. She noted the bulges, estimating them to be approximately nickel- and quarter-sized, and noted Mr. Osbaldo's signs of obvious discomfort. She referred Mr. Osbaldo to the doctor and prescribed him Acetaminophen in the meantime.

**ANSWER: Defendants admit Plaintiff's medical records indicate he saw a nurse on February 28, 2014, and was referred to the Doctor. Defendants lack knowledge sufficient to either admit or deny the remaining allegations in this paragraph, but deny causing any injury to the Plaintiff.**

35.     Mr. Osbaldo encountered Defendant Unknown Menard Physician on March 7, 2014. Mr. Osbaldo told the doctor about the beating he had suffered, and showed him the bruise and bulges. Defendant Unknown Menard Physician failed to provide Mr. Osbaldo with any minimally adequate treatment in response to his medical concerns. He told Mr. Osbaldo that it was not a hernia, but did not conduct any tests or perform any evaluation to discover the source of the tender and painful bulges. Instead, he left Mr. Osbaldo to suffer.

**ANSWER: Defendants admit Plaintiff's medical records indicate he saw a doctor on March 7, 2014. Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph, but deny causing any injury to the Plaintiff.**

36.     Mr. Osbaldo continues to suffer pain in his jaw and his left side below his belly button to this day.

**ANSWER: Defendants lack knowledge sufficient to admit or deny the allegations in this paragraph, but deny causing any injury to the Plaintiff.**

<u>Disciplinary Proceedings</u>

37.     In the days following the attack, Mr. Osbaldo received a disciplinary report accusing him of possessing alcohol and an altered television set. The report was in English.

**ANSWER: Defendants admit Plaintiff was served with a February 5, 2014, disciplinary ticket charging him Damage or Misuse of Property and Drugs & Drug Paraphernalia on February 6, 2014. Defendants admit the disciplinary ticket is in English.**

38.     On February 10, 2014, Mr. Osbaldo was brought before the Adjustment Committee a committee created by the Illinois Administrative Code to make findings regarding discipline and to determine discipline—comprised of Defendants Hughes and Hart.

**ANSWER: Defendants admit the allegations in this paragraph.**

39.     Despite his obvious inability to speak and understand English fluently, Mr. Osbaldo was not provided with a translator or staff assistance to enable him to understand the Adjustment Committee proceedings, or help him to communicate to Defendants Hughes and Hart.

**ANSWER: Defendants Hughes and Hart admit Plaintiff was not provided with a translator at the time of the hearing. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

40.     Mr. Osbaldo did his best to communicate to Defendants Hughes and Hart that he was requesting to call Defendant Berry as a witness to state where the alcohol and altered television had been found. Defendants Hughes and Hart refused Mr. Osbaldo's request.

**ANSWER: Defendants Hughes and Hart deny Plaintiff requested witnesses and deny they could have refused a request which they did not receive. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

41.     Mr. Osbaldo requested more time to prepare his defense, given the language barrier he faced and his desire to call Defendant Berry as a witness. Defendants Hughes and Hart refused Mr. Osbaldo's request.

**ANSWER: Defendants Hughes and Hart deny Plaintiff requested witnesses or more time and deny they could have refused a request which they did not receive. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

42.     Defendants Hughes and Hart asked Mr. Osbaldo: "guilty or not guilty?" Mr. Osbaldo replied: "not guilty." Defendants Hughes and Hart refused to let Mr. Osbaldo speak otherwise.

**ANSWER: Defendants Hughes and Hart admit Plaintiff pled not guilty to the disciplinary charges. Defendants Hughes and Hart deny the remaining allegations in this paragraph. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

43.     Defendant Berry noted that the contraband and altered television set were found in a property box that had the serial number 008851. Defendants knew via IDOC records that Mr. Osbaldo did not have a property box with a serial number of 008851. Defendants also knew via IDOC records that the television set belonging to Mr. Osbaldo had a different serial number than the altered television set that Defendant Berry found in the cell. Despite having possession of this information, Defendants failed to disclose it to Mr. Osbaldo at or before the hearing.

**ANSWER: Defendant Berry admits the February 5, 2014, disciplinary ticket indicates a needle was found in property box #008851. Defendant Berry admits a television set was found in Plaintiff's cell, but denies it was found inside of the property box. Defendants deny personal knowledge of who altered the television set located in the Plaintiff's cell or whether the television set was the Plaintiff's. Defendants deny the allegations against them.**

44.     At the February 10 hearing, Defendants Hughes and Hart found that Mr. Osbaldo had committed the violations that were charged and sentenced him to six months of segregation, commissary restriction, and contact visit restriction. They also downgraded Mr. Osbaldo's privileges to the lowest level for six months.

**ANSWER: Defendants Hughes and Hart admit they recommended the Plaintiff be found guilty of the disciplinary charges against him during the February 10, 2014, Adjustment Committee hearing. Defendants Hughes and Hart admit they recommended discipline of 6 months in segregation, 6 months commissary restriction, 6 months contact visit restrictions, and 6 months of C-grade status. Defendant Harrington admits his designee signed the report, approving of the**

**discipline recommended. The remaining Defendants lack knowledge sufficient to either admit or deny the allegations in this paragraph.**

<u>Conditions in Segregation</u>

45.     Mr. Osbaldo encountered deplorable conditions of confinement while in segregation at Menard. The mattress in Mr. Osbaldo's cell was stained with urine and feces. Mr. Osbaldo's cell was also filthy. There was dirt and mold on the walls, and hair, dust, and dirt all over the floor and in the air vent. Mr. Osbaldo's cell was also frequently invaded by insects, especially during the warmer months of the year. Mr. Osbaldo, like other prisoners, was not given any cleaning supplies or disinfectant to clean his filthy cell, despite his numerous requests.

**ANSWER: Plaintiff's claims regarding the conditions in segregation have been dismissed; therefore, no response to this paragraph is necessary. To the extent a response to this paragraph is required, the allegations are denied.**

46.     The cells in the segregation unit at Menard are $4^1/_2$' x 10', just a fraction of the size of a normal cell. The open space—the space not occupied by a toilet/sink or bed—is even smaller: just 1' x 8'. That space is so small that prisoners like Mr. Osbaldo do not even have room to pace back and forth.

**ANSWER: Plaintiff's claims regarding the conditions in segregation have been dismissed; therefore, no response to this paragraph is necessary. To the extent a response to this paragraph is required, the allegations are denied.**

47.     Mr. Osbaldo's toilet would constantly leak water onto the floor of his cell, essentially flooding most of the open space in his cramped cell. The flooding caused the

mold in Mr. Osbaldo's cell to grow more aggressively. Flushing the toilet made the problem even worse.

**ANSWER: Plaintiff's claims regarding the conditions in segregation have been dismissed; therefore, no response to this paragraph is necessary. To the extent a response to this paragraph is required, the allegations are denied.**

48.     Mr. Osbaldo was housed in a cell by himself. Because of his status in the segregation unit, he was locked in his filthy, unsanitary cell 23 to 24 hours of each day. Mr. Osbaldo was rarely given the opportunity to walk outside, or even take a shower.

**ANSWER: Plaintiff's claims regarding the conditions in segregation have been dismissed; therefore, no response to this paragraph is necessary. To the extent a response to this paragraph is required, the allegations are denied.**

49.     During the rare occasions that Mr. Osbaldo was taken to shower, he was forced to shower in stalls that were as filthy as his cell and infested with mold. On information and belief, the showers were never cleaned.

**ANSWER: Plaintiff's claims regarding the conditions in segregation have been dismissed; therefore, no response to this paragraph is necessary. To the extent a response to this paragraph is required, the allegations are denied.**

50.     Mr. Osbaldo was given a clean change of clothes only once during the six months that he was in segregation. Defendants refuse to give him fresh clothes for months on end.

**ANSWER: Plaintiff's claims regarding the conditions in segregation have been dismissed; therefore, no response to this paragraph is necessary. To the extent a response to this paragraph is required, the allegations are denied.**

51.     The segregation unit at Menard has no heating or air conditioning. As a result, during the summer months, Mr. Osbaldo was forced to live in a cell that was approximately 90 degrees on some days. Mr. Osbaldo requested a fan to lower the temperature, but his request was denied.

**ANSWER: Plaintiff's claims regarding the conditions in segregation have been dismissed; therefore, no response to this paragraph is necessary. To the extent a response to this paragraph is required, the allegations are denied.**

52.     Mr. Osbaldo frequently complained about the conditions he was forced to endure. Yet no member of the IDOC staff, including Defendants Harrington and Butler, ever took any actions to remedy the conditions that Mr. Osbaldo encountered.

**ANSWER: Plaintiff's claims regarding the conditions in segregation have been dismissed; therefore, no response to this paragraph is necessary. To the extent a response to this paragraph is required, the allegations are denied.**

**COUNT I**
**42 U.S.C. § 1983 – Excessive Force (Eighth Amendment)**
**Defendants Berry and Qualls**

53.     Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Defendants incorporate by reference their responses to each paragraph herein.**

54.     As described more fully above, Defendants Berry and Qualls used force against Mr. Osbaldo. That use of force was unreasonable in light of the facts and circumstances present at the time that the force was used.

**ANSWER: Defendants deny using unconstitutional force against the Plaintiff and deny the allegations against them.**

55.     In using force against Mr. Osbaldo, Defendants Berry and Qualls intentionally used extreme or excessive cruelty toward him for the very purpose of causing him harm, and not in a good faith effort to maintain or restore security or discipline.

**ANSWER: Defendants deny the allegations in this paragraph.**

56.     Alternatively, Defendants Berry and Qualls knew that using force presented a risk of harm to Mr. Osbaldo, but they recklessly disregarded that risk and Mr. Osbaldo's safety by failing to take reasonable measures to minimize that risk of harm.

**ANSWER: Defendants deny the allegations in this paragraph.**

57.     As a direct and proximate result of Defendants' misconduct, Mr. Osbaldo's rights were violated and he experienced injuries, including pain, physical injuries, suffering, and emotional distress.

**ANSWER: Defendants deny the allegations in this paragraph.**

**COUNT II**
**42 U.S.C. § 1983 – Failure to Intervene (Eighth Amendment)**
**Defendants Berry, Qualls, Snell, and Purdom**

58.     Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Defendants incorporate by reference their responses to each paragraph herein.**

59.     As described more fully above, Defendants Berry, Qualls, Snell, and Purdom had a reasonable opportunity to prevent the violation of Mr. Osbaldo's constitutional rights as set forth above had they been so inclined, but failed to do so.

**ANSWER: Defendants deny the allegations in this paragraph.**

60.     Defendants Berry, Qualls, Snell, and Purdom knew of a substantial risk of harm to Mr. Osbaldo's safety, but consciously disregarded that risk by failing to take reasonable steps to prevent the harm from occurring.

**ANSWER: Defendants deny the allegations in this paragraph.**

61.     Defendants' failures to act were intentional, done with malice, and/or done with reckless indifference to Mr. Osbaldo's rights.

**ANSWER: Defendants deny the allegations in this paragraph.**

62.     As a direct and proximate result of Defendants' misconduct, Mr. Osbaldo's rights were violated and he experienced injuries, including pain, physical injuries, suffering, and emotional distress.

**ANSWER: Defendants deny the allegations in this paragraph.**

**COUNT III**
**42 U.S.C. § 1983 – Denial of Medical Care (Eighth Amendment)**
**Defendants Berry, Qualls, Snell, Purdom, Lang,**
**and Unknown Menard Physician**

63.     Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Defendants incorporate by reference their responses to each paragraph herein.**

64.     As described more fully above, Defendants Berry, Qualls, Snell, Purdom, Lang, and Unknown Menard Physician had notice of Mr. Osbaldo's medical needs and the seriousness of his medical needs, and knew the risk of harm to Mr. Osbaldo if he did not receive appropriate medical care. Despite that knowledge, Defendants failed to provide

him with any proper medical care or access to medical care, in violation of the Eighth Amendment to the United States Constitution.

**ANSWER: Defendants deny the allegations in this paragraph.**

65.    Defendants' misconduct was undertaken intentionally, with malice, and/or with deliberately indifference to Mr. Osbaldo's objectively serious medical needs.

**ANSWER: Defendants deny the allegations in this paragraph.**

66.    As a direct and proximate result of Defendants' misconduct, Mr. Osbaldo's rights were violated and he experienced injuries, including pain, physical injuries, suffering, and emotional distress.

**ANSWER: Defendants deny the allegations in this paragraph.**

**COUNT IV**
**42 U.S.C. § 1983 – Due Process (Fourteenth Amendment)**
**Defendants Hughes, Hart, and Harrington**

67.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Defendants incorporate by reference their responses to each paragraph herein.**

68.    As stated more fully above, as a result of the disciplinary charges brought by Defendants, Mr. Osbaldo was sentenced to six months of segregation, among other restrictions. The conditions that Mr. Osbaldo experienced in segregation were atypical and significant and imposed such a hardship on him that the risk of having to endure those conditions triggered a liberty interest requiring due process.

**ANSWER: Defendants admit Plaintiff was given six months in segregation as a result of his 2/5/14 disciplinary tickets. Defendants deny the remaining allegations in this paragraph.**

69.     Defendants Hughes, Hart, and Harrington failed to provide Mr. Osbaldo with due process before depriving him of that liberty interest. Specifically, Defendants Hughes, Hart, and Harrington failed to: (1) provide Mr. Osbaldo written notice of the charges against him in a language he could understand; (2) provide Mr. Osbaldo staff assistance or a translator at the disciplinary hearing to allow Ms. Osbaldo to understand what was happening; (3) provide Mr. Osbaldo staff assistance or a translator so that he could communicate to the hearing committee his statements on his own behalf; (4) inform Mr. Osbaldo of evidence or information that showed that he was not guilty of the charged offense; (5) grant Mr. Osbaldo a continuance despite there being good cause; (6) allow Mr. Osbaldo to call a witness; and (7) allow Mr. Osbaldo to speak on his own behalf.

**ANSWER: Defendants deny the allegations in this paragraph.**

70.     The misconduct committed by Defendants Hughes, Hart, and Harrington were not random and unauthorized, but instead were the foreseeable result of the policies and practices of Defendants.

**ANSWER: Defendants deny the allegations in this paragraph.**

71.     Prior to the events giving rise to Plaintiff's Amended Complaint, Defendants Hughes, Hart, and Harrington had notice of widespread policies and practices at Menard pursuant to which prisoners like Mr. Osbaldo were routinely being denied due process of law during disciplinary hearings. Despite this knowledge, Defendants did nothing to ensure

that prisoners at Menard received due process of law before being deprived of a liberty interest.

**ANSWER: Defendants deny the allegations in this paragraph.**

72.    As a direct and proximate result of Defendants' misconduct, Mr. Osbaldo's rights were violated and he experienced injuries, including pain, physical injuries, suffering, and emotional distress.

**ANSWER: Defendants deny the allegations in this paragraph.**

**COUNT V**
**42 U.S.C. § 1983 – Conditions of Confinement (Eighth Amendment)**
**Defendants Harrington and Butler**

73.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Plaintiff's claim in Count V has been dismissed and, therefore, no response is necessary. To the extent a response is necessary, the claims are denied.**

74.    Defendants Harrington and Butler, as Wardens at Menard, had a responsibility to ensure that prisoners at Menard were housed in constitutionally adequate conditions of confinement, including prisoners confined in segregation.

**ANSWER: Plaintiff's claim in Count V has been dismissed and, therefore, no response is necessary. To the extent a response is necessary, the claims are denied.**

75.    Prior to the events giving rise to Plaintiff's Amended Complaint, Defendants Harrington and Butler had notice of the existence of the conditions of confinement in the segregation unit described more fully above.

**ANSWER: Plaintiff's claim in Count V has been dismissed and, therefore, no response is necessary. To the extent a response is necessary, the claims are denied.**

76.     Defendants Harrington and Butler knew that those conditions of confinement were so deplorable that they posed a risk of harm to the health and safety of prisoners like Mr. Osbaldo. Despite this knowledge, Defendants Harrington and Butler failed to take reasonable steps to remedy or improve those conditions of confinement.

**ANSWER: Plaintiff's claim in Count V has been dismissed and, therefore, no response is necessary. To the extent a response is necessary, the claims are denied.**

77.     As a direct and proximate result of Defendants' misconduct, Mr. Osbaldo's rights were violated and he experienced injuries, including pain, physical injuries, suffering, and emotional distress.

**ANSWER: Plaintiff's claim in Count V has been dismissed and, therefore, no response is necessary. To the extent a response is necessary, the claims are denied.**

**COUNT VI**
**Battery**
**Defendants Berry and Qualls**

78.     Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Defendants incorporate by reference their responses to each paragraph herein.**

79.     As described more fully above, Defendants Berry and Qualls intentionally made physical contact with Mr. Osbaldo without valid cause. That physical contact was offensive and harmful.

**ANSWER: Defendants deny the allegations in this paragraph.**

80.     As a direct and proximate result of Defendants' conduct, Mr. Osbaldo experienced injuries, including pain, physical injuries, suffering, and emotional distress.

**ANSWER: Defendants deny the allegations in this paragraph.**

## COUNT VII
## Assault
## Defendants Berry and Qualls

81.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Defendants incorporate by reference their responses to each paragraph herein.**

82.    As described more fully above, Defendants Berry and Qualls intended to harm and/or frighten Mr. Osbaldo without valid cause. Their actions did in fact cause Mr. Osbaldo fear and apprehension.

**ANSWER: Defendants deny the allegations in this paragraph.**

83.    As a direct and proximate result of Defendants' conduct, Mr. Osbaldo experienced injuries, including pain, physical injuries, suffering, and emotional distress.

**ANSWER: Defendants deny the allegations in this paragraph.**

## COUNT VIII
## Intentional Infliction of Emotional Distress
## Defendants Berry and Qualls

84.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Defendants incorporate by reference their responses to each paragraph herein.**

85.    As described more fully above, by beating and abusing Mr. Osbaldo, Defendants Berry and Qualls engaged in extreme and outrageous conduct. That conduct was rooted in an abuse of power or authority.

**ANSWER: Defendants deny the allegations in this paragraph.**

86.    The actions of Defendants Berry and Qualls were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress, and with reckless disregard of that probability.

**ANSWER: Defendants deny the allegations in this paragraph.**

87.    As a direct and proximate result of Defendants' conduct, Mr. Osbaldo experienced injuries, including severe emotional distress and suffering.

**ANSWER: Defendants deny the allegations in this paragraph.**

**COUNT IX**
**Negligent or Willful and Wanton Conduct**
**All Defendants**

88.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Defendants incorporate by reference their responses to each paragraph herein.**

89.    In the manner described more fully above, Defendants breached the duty of care that they owed to Mr. Osbaldo and other prisoners at Menard in their care.

**ANSWER: Defendants deny the allegations in this paragraph.**

90.    Alternatively, the actions of Defendants were willful and wanton in that they demonstrated an utter indifference to the safety of others. Defendants were aware that their misconduct posed a serious risk of harm or safety to Mr. Osbaldo and other prisoners in their care, and recklessly disregarded the consequences of those actions.

**ANSWER: Defendants deny the allegations in this paragraph.**

91.     Defendants' actions were undertaken willfully and wantonly, and/or with reckless indifference or conscious disregard for Mr. Osbaldo's health and safety.

**ANSWER: Defendants deny the allegations in this paragraph.**

92.     As a direct and proximate result of Defendants' negligence and/or willful and wanton conduct, Mr. Osbaldo experienced injuries, including pain, physical injuries, suffering, and emotional distress.

**ANSWER: Defendants deny the allegations in this paragraph.**

**COUNT X**
**Respondeat Superior**
**Wexford Health Sources, Inc.**

93.     Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Count X is not directed at any of the Defendants herein and, therefore, no response is required.**

94.     In committing the acts alleged in the preceding paragraphs, Defendant Unknown Menard Physician was an employee, member, and agent of Wexford, acting at all relevant times within the scope of his employment.

**ANSWER: Count X is not directed at any of the Defendants herein and, therefore, no response is required.**

95.     Consequently, Defendant Wexford is liable for the actions of Defendant Unknown Menard Physician.

**ANSWER: Count X is not directed at any of the Defendants herein and, therefore, no response is required.**

96.    Additionally, Defendant Wexford, as a private corporation acting under color of state law, should be held liable under 42 U.S.C. § 1983 for the conduct of its employees acting within the scope of their employment. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 793–95 (7th Cir. 2014).

**ANSWER: Count X is not directed at any of the Defendants herein and, therefore, no response is required.**

## COUNT XI
## Indemnification

97.    Plaintiff incorporates each paragraph of this Amended Complaint as if fully restated here.

**ANSWER: Count XI is subject to a Motion to Dismiss filed contemporaneously with Defendants' Partial Answer and Affirmative Defenses. No Answer directed to this Count is required at this time.**

98.    Illinois law provides that public entities are direct to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

**ANSWER: Count XI is subject to a Motion to Dismiss filed contemporaneously with Defendants' Partial Answer and Affirmative Defenses. No Answer directed to this Count is required at this time.**

99.    Defendants Berry, Qualls, Snell, Purdom, Hughes, Hart, Harrington, Butler, and Lang are or were employees of the IDOC and acted within the scope of their employment in committing the misconduct described above.

**ANSWER: Count XI is subject to a Motion to Dismiss filed contemporaneously with Defendants' Partial Answer and Affirmative Defenses. No Answer directed to this Count is required at this time.**

100.   The State of Illinois is obligated to pay any judgment entered against individual Defendants within the scope of their employment for the IDOC.

**ANSWER: Count XI is subject to a Motion to Dismiss filed contemporaneously with Defendants' Partial Answer and Affirmative Defenses. No Answer directed to this Count is required at this time.**

### REQUEST FOR RELIEF

Defendants deny the Plaintiff is entitled to any relief whatsoever.

### JURY DEMAND

Defendants hereby demand a trial by jury.

### AFFIRMATIVE DEFENSES

**1.      Qualified Immunity**

At all times relevant to Plaintiff's claims, Defendants charged herein acted in the good faith performance of their official duties without violating Plaintiff's clearly established constitutional rights. Defendants are protected from liability by the doctrine of qualified immunity.

**2.      Sovereign Immunity**

To the extent that Plaintiff's claims against Defendants are in their official capacity, the claims are barred by the doctrine of sovereign immunity. Plaintiff's tort law claims are also barred by sovereign immunity.

**3.      Injunctive Relief Barred**

To the extent Plaintiff is suing Defendants for declaratory relief or injunctive relief not intended to address ongoing violations, Plaintiff's requests for such relief are barred by the Eleventh Amendment, sovereign immunity, and the Prison Litigation Reform Act.

**4.      Exhaustion of Administrative Remedies**

Plaintiff has filed suit concerning prison conditions while in the Department of Corrections. Plaintiff has failed to properly exhaust his administrative remedies as is required prior to filing suit under 42 U.S.C. §1983, his claims are barred by the Prison Litigation Reform Act (42 U.S.C. §1997e(a)) and Perez v. Wisconsin Dept. of Corrections, 182 F. 3d 532 (7th Cir. 1999).

WHEREFORE, Defendants respectfully request that this Court deny all relief sought by Plaintiff and enter judgment in their favor.

Respectfully submitted,

RICHARD HARRINGTON, ROBERT HUGHES, WILLIAM QUALLS, JUSTIN SNELL, JASON HART, MATTHEW PURDOM, NATHAN BERRY, and AIMEE LANG,

Defendants,

LISA MADIGAN, Attorney General, State of Illinois,

Attorney for the Defendants,

  s/ Melissa A. Jennings
Melissa A. Jennings,  #6300629
Assistant Attorney General
500 South Second Street
Springfield, IL  62706
Phone: (217) 782-9767
Fax: (217) 524-5091
E-Mail: mjennings@atg.state.il.us

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | | |
|---|---|---|
| JOSE-NICOLAS OSBALDO, #R-72183, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.  15-964-JPG |
| | ) | |
| NATHAN BERRY, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on March 1, 2016, I electronically filed Defendants' Partial Answer and Affirmative Defenses, with the Clerk of the Court using the CM/ECF system, which will send notification of same to the following:

| | |
|---|---|
| Arthur Loevy: | loevylaw@loevy.com |
| Jon Loevy: | jon@loevy.com |
| Sarah Grady: | sarah@loevy.com |
| Timothy Dugan: | tdugan@sandbergphoenix.com |
| Leslie Warren: | lwarren@sandbergphoenix.com |

and I hereby certify that on the same date, I mailed by United States Postal Service, the described document to the following non-registered participant: None

Respectfully submitted,

LISA MADIGAN, Attorney General,
State of Illinois,

  s/ Melissa A. Jennings
Melissa A. Jennings,  #6300629
Assistant Attorney General
500 South Second Street
Springfield, IL   62706
Phone: (217) 782-9767
Fax: (217) 524-5091
E-Mail: mjennings@atg.state.il.us