**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| OSBALDO JOSE-NICOLAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cv-964-NJR-DGW |
| ) | |
| NATHAN BERRY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' COMBINED POST-TRIAL MOTION**

NOW COME the Defendants, NATHAN BERRY, AIMEE LANG, WILLIAM QUALLS, and JUSTIN SNELL, by and through their counsel, LISA MADIGAN, Attorney General for the State of Illinois, and submit this memorandum of law in support of their combined post-trial motion, stating as follows:

**INTRODUCTION AND BACKGROUND**

Plaintiff, an inmate of the Illinois Department of Corrections, initially filed this matter *pro se* on August 28, 2015. (Doc. 1.) Shortly thereafter, Plaintiff was appointed counsel and, following multiple amendments to the complaint and dismissal of certain defendants, this matter proceeded to jury trial on the following claims: (1) Eighth Amendment excessive force claim against Nathan Berry and William Qualls; (2) Eighth Amendment failure to intervene claim against Nathan Berry, Matthew Purdom, William Qualls, and Justin Snell; (3) Eighth Amendment deliberate indifference to a serious medical need claim against Nathan Berry, Aimee Lang, Matthew Purdom, William Qualls, and Justin Snell; and (4) Illinois state law willful and wanton conduct claim against Nathan Berry, Aimee Lang, Matthew Purdom, William Qualls, and Justin Snell. (Doc. 160.) Following a

three-day trial, the jury found in favor of Matthew Purdom on all claims,[1] in favor of Nathan Berry on Plaintiff's excessive force claim, in favor of Justin Snell on Plaintiff's deliberate indifference to a serious medical need claim, and in favor of Plaintiff on the remaining claims. (Doc. 203.) The jury awarded Plaintiff $1,000.00 in compensatory damages and assessed punitive damages as follows: $200,000.00 against William Qualls; $50,000.00 against Aimee Lang; $1,000.00 against Nathan Berry; and $100.00 against Justin Snell. *Id.* Based on the Court's prior orders, voluntary dismissal of various claims and defendants, and the jury verdict, the Clerk of the Court entered judgment on August 20, 2018. (Doc. 207.)

For the reasons stated herein, Defendants move for post-trial relief from this Court pursuant to Federal Rules 50 and 59. Defendants respectfully request this honorable Court grant their Motion, enter judgment in their favor on Plaintiff's Willful and Wanton Conduct claim (Count 9) or, in the alternative, dismiss Plaintiff's Willful and Wanton Conduct claim (Count 9), remit the award of punitive damages, order a new trial, and/or grant them any additional relief that the Court deems just and proper.

## ARGUMENT

1. **Defendants are Entitled to Relief Under Federal Rule 59 Because the Award of Punitive Damages was Excessive, Because the Willful and Wanton Conduct Claim was Improperly Before the Jury, and Because an Evidentiary Issue Deprived Defendants of a Fair Trial.**

   **A. Standard for Relief Under Federal Rule of Civil Procedure 59**

   Federal Rule of Civil Procedure 59 provides that a party may move for a new trial or to alter or amend a judgment, within 28 days after entry of judgment. Fed. R. Civ. P. 59. A new trial may be granted where the "verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving party." *Mid-America Tablewares, Inc. v.*

---

[1] Since Matthew Purdom prevailed at trial, he does not join Defendants' Post-Trial Motion.

*Mogi Trading Co.*, 100 F. 3d 1353, 1367 (7th Cir. 1996). A party's motion for a new trial should be granted where "the verdict is against the manifest weight of the evidence or if a prejudicial error occurred." *Romero v. Cincinnati, Inc.*, 171 F. 3d 1091, 1096 (7th Cir. 1999). "In passing on a motion for a new trial, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County, Ill.*, 650 F. 3d 631, 633 (7th Cir. 2011).

The standards for determining a motion for a new trial and a motion for judgment as a matter of law differ significantly, such that a motion for a new trial may be granted even if a motion for judgment as a matter of law must be denied. *Id.* at 634. A new trial is appropriate if the court, after undertaking its own assessment of the evidence and the credibility of the witnesses, is of the opinion that the verdict is against the manifest weight of the evidence. *Id.* at 633–34.

### B.  The Punitive Damage Award was Excessive, Arbitrary, and Unconstitutional

The Due Process Clause of the Fourteenth Amendment prohibits grossly excessive or arbitrary punishments on a tortfeasor. *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). The reason is that "[e]lementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996). To the extent an award is excessive, it furthers no legitimate purpose. *State Farm*, 538 U.S. at 417; *see also Lenard v. Argento*, 699 F.2d 874, 890 (7th Cir. 1983) ("Damages should not go beyond deterrence and become a windfall."). In reviewing punitive damages, courts are to consider (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the

punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Gore*, 517 U.S. at 575.

The United States Court of Appeals for the Seventh Circuit recently re-addressed the issue of excessive punitive damages. In *Beard v. Wexford Health Sources, Inc.*, an inmate of the Illinois Department of Corrections represented by appointed counsel brought an Eighth Amendment claim against Wexford Health Sources, Inc. ("Wexford")—the contractual medical provider for inmates in the Illinois Department of Corrections—concerning delays in receiving ankle surgery. 2018 WL 32798540, *1 (7th Cir. Aug. 21, 2018) (hereinafter "*Beard*"). Following a jury trial, the jury found in favor of the prisoner-plaintiff and awarded him $10,000.00 in compensatory damages and assessed $500,000.00 in punitive damages against Wexford. *Beard*, at *1. On post-trial motion by Wexford, the trial court found that the punitive damages award violated the Fourteenth Amendment's prohibition on excessive or arbitrary punishment and reduced the punitive damage award to $50,000.00. *Beard*, at *1. The Seventh Circuit reviewed the reduction and noted that it was "consistent with the Supreme Court's caution that 'few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.' *State Farm*, 538 U.S. at 425." *Beard*, at *1 (parallel citation omitted). However, the Seventh Circuit vacated the judgment and remanded the case back to the district court because the court erred procedurally by not allowing the prisoner-plaintiff a choice between the reduced punitive damage award and a new trial on compensatory and punitive damages. *Beard*, at *1.

The Seventh Circuit also discussed in great detail—but declined to make a ruling to avoid an unnecessary constitutional analysis based on *Spector Motor Srv. v. McLaughlin*, 323 U.S. 101, 104–05 (1944)—whether there is a statutory limit on punitive damages in cases brought under § 1983. *Beard*, at *3. The Seventh Circuit highlighted this issue because analysis of any statutory

limit would precede any constitutional baseline. *Beard*, at *5. A statutory limit on punitive damages in § 1983 cases—or specifically in a lawsuit brought by an inmate—would be an issue of first impression in this Circuit. *Beard*, at *5. However, the United States Court of Appeals for the Eleventh Circuit has addressed this issue, in part.

In *Johnson v. Breeden*, the Eleventh Circuit examined the applicability of punitive damages in cases brought by prisoner-plaintiffs and determined the Prison Litigation Reform Act of 1996 ("PLRA") limits punitive damages. 280 F.3d 1308, 1322 (11th Cir. 2002). Specifically, the Eleventh Circuit found that the plain language of 18 U.S.C. § 3626(g)(7) defined "prospective relief" as "all relief other than compensatory monetary damages" and, therefore, punitive damages falls under the definition of prospective relief. *Id.* at 1324–25. Prospective relief is limited by the PLRA such that it must be narrowly drawn, extend no further than necessary to correct the violation of the federal right at issue, and be least intrusive means necessary to correct the violation of the federal right. 18 U.S.C. § 3626(a)(1)(A). Accordingly, to award punitive damages to a prisoner-plaintiff, the court must find that punitive damages are narrowly drawn, extend no further than necessary to correct the violation of the federal right, and be the least intrusive means necessary to correct the violation of the federal right. Applying the *Johnson* holding to the instant case, it is clear that the punitive damage award of $251,100 is not narrowly drawn and is not the least intrusive means necessary to correct the violation of Plaintiff's rights; a much smaller punitive damage award would satisfy the PLRA. Accordingly, based on this statutory limit, the Court should remit the punitive damage award to an amount that would comply with the PLRA.

Even if the Court find there is no statutory limit under the PLRA, the constitutional protections outlined in *State Farm*, *Gore*, *Beard*, and *Lenard* mandate that the Court remit the punitive damages in this case for the reasons stated below.

### i. Reprehensibility of Defendants' Conduct

Factors to consider in assessing the degree of reprehensibility of a defendant's conduct include whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 538 U.S. at 419. "The existence of any one of these factors weighing in favor of a plaintiff may not be sufficient to sustain a punitive damages award; and the absence of all of them renders any award suspect." *Id.*

Here, numerous factors weigh in Defendants' favor. Taking Plaintiff's version of events as true, Defendants' conduct was an isolated incident that did not result in long-term harm to the Plaintiff. A more modest award of punitive damages would satisfy the need to deter future misconduct.

### ii. Relationship Between Harm and Punitive Damage Award

The next factor for the Court to consider is the relationship between the harm suffered and the punitive damage award. The purpose of this consideration is to ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and the general damages suffered. *State Farm*, 538 U.S. at 426; *TXO Production, Corp. v. Alliance Resources, Corp.*, 509 U.S. 443, 560 (1993) (punitive damages should bear a reasonable relationship to the harm that has actually occurred). The Supreme Court has not identified concrete constitutional limits on the ratio between harm, or potential harm, to the plaintiff and the punitive damages award. *State Farm*, 538 U.S. at 425. However, the Court has made clear that "in practice, few awards exceeding a single digit ratio between punitive and compensatory damages, to a

significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. The Court has noted that a punitive damage award "of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425; *see also Gore*, 517 U.S. at 581.

Here, the ratio of compensatory ($1,000.00) to punitive damages is 1 to 0.1 ($100 punitive damages against Defendant Snell), 1 to 1 ($1,000 punitive damages against Defendant Berry, 1 to 50 ($50,000 punitive damages against Defendant Lang), and 1 to 200 ($200,000 punitive damages against Defendant Qualls). It is difficult to comprehend how 1 to 50 and 1 to 200 ratios do not violate the Fourteenth Amendment rights of Defendants Lang and Qualls where the Supreme Court and the Seventh Circuit have repeatedly held that a "single digit ratio" is appropriate in all but the most egregious cases. This is further confirmed based on the comparable cases discussed below.

### iii. Comparable Cases

The final guidepost for assessing punitive damages is the "disparity between the punitive damages award and the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 428; *Gore*, 517 U.S. at 575.

In this case, Defendants were alleged to have punched Plaintiff on at least one occasion, hit him repeatedly in the shower, witnessed the attack and failed to intervene, or failed to provide Plaintiff with prompt medical attention. The described conduct resulted in Plaintiff having minor, short-term injuries and a moderate amount of pain. It is clear that based on comparable cases, the total punitive damage award of $251,100 is excessive and arbitrary. *See Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996) ($22,500 against each defendant prison guard who repeatedly kicked, beat and then maced the plaintiff); *Bogan v. Stroud*, 958 F.2d 180, 182 (7th Cir. 1992) ($7,000 in total punitive damages against three prison officers who beat and stabbed an inmate after subduing

him); *Taliferro v. Augle,* 757 F.2d 157, 162 (7th Cir. 1985) ($25,000 in punitive damages against two Chicago police officers for destroying the plaintiff's dental plate and knocking out many of his real teeth); *Terrell v. Village of University Park*, 1994 WL 30960 (N.D. Ill. 1994) ($10,000 in punitive damages for plaintiff who was arrested, slapped and slammed against police car); *Burks v. Harris*, 1991 WL 140114 (N.D. Ill. 1991) ($6,500 in punitive damages against defendant police officers for striking the plaintiff below the eye with police radio); *Grosse v. Van Milligen*, 1987 WL 16242 (N.D. Ill. 1987) ($10,000 in punitive damages against police officer who grabbed the plaintiff, threw him to the ground, and punched him multiple times); *see also Payne v. Jones*, 711 F.3d 85, 106 (2d Cir. 2013) (ordering remittitur of $300,000 punitive damage award in case where police officers attacked a veteran with PTSD and left his face bloody and swollen, and worsened existing back pain).

In fact, Counsel for Plaintiff has opined that the punitive damage award in this case is "virtually without precedent." Andy Thayer, *Federal Jury Slams Prison Employees for Brutal Behavior*, https://loevy.com/blog/federal-jury-slams-prison-employees-for-brutal-behavior/ (Aug. 17, 2018), a copy of this blog post as it existed on September 11, 2018, is attached hereto as Exhibit 1. Given that the punitive damages award in this case is unprecedented, as admitted by Counsel for Plaintiff and based on the comparable cases, remittitur of the punitive damage award is appropriate. Accordingly, Defendants respectfully request this honorable Court grant their Motion and remit the punitive damage award to bring the award in compliance with the "single digit ratio" guideline adopted by the Supreme Court and Seventh Circuit. Defendants suggest a punitive damage award against Defendant Qualls for $6,000 and against Defendant Lang for $2,000 would not be excessive or unconstitutional, and still serve the purpose of deterring future misconduct. Plaintiff, of course, should be given the option of accepting the reduced punitive damage award or

proceeding to a new trial. *Beard*, at *1.

### iiii. The Current Punitive Damage Award Exceeds the Defendants' Qualls and Lang Ability to Pay

While not addressed in *State Farm* or *Gore*, the Seventh Circuit has directed courts to consider reducing punitive damages awards if the defendant can show financial hardship. *Harris v. Harvey,* 605 F.2d 330 (7th Cir.1979). Damage awards which greatly exceed the defendant's ability to pay result in a waste of time both for the jury, and later, the bankruptcy courts. *Kemezy v. Peters,* 79 F.3d 33, 35 (7th Cir. 1996); *see also Bell v. City of Milwaukee,* 746 F.2d 1205, 1267 (7th Cir. 1984) (concluding that reduction in assessment of punitive damages against individual defendant from $350,000 to $50,000 considered defendant's relative wealth, yet still fulfilled aims of punishment and deterrence). Counsel for Plaintiff has opined that Defendants are personally responsible for the compensatory and punitive damage awards in this case. (Exh. 1) ("'What makes this verdict particularly sting for the prison employees is that under Illinois statutes, the State is forbidden to compensate them for verdict awards that come out of their pockets,' said Sarah Grady"). Evidence was introduced during trial that Defendant Qualls has an approximate salary of $78,000. A punitive damage award of $200,000 against Defendant Qualls—well over twice his annual salary—would likely result in Defendant Qualls becoming destitute. Similarly, a $50,000 punitive damage award against Defendant Lang who has approximate salary of $65,000[2] would result in her becoming destitute. Since Defendants Qualls and Lang would be financially incapable of paying the punitive damage award, the award should be reduced.

### C. The Court Erred by Allowing Plaintiff's Willful and Wanton Conduct Claim to be Presented to the Jury.

The Court erred by allowing Plaintiff's willful and wanton conduct claim to be presented

---

[2] *See, e.g.,* Employee Salary Database, State of Illinois Comptroller https://illinoiscomptroller.gov/financial-data/state-expenditures/employee-salary-database/.

to the jury for decision because the claim is barred by state sovereign immunity. Allowing this claim to proceed to trial constituted a manifest error of law such the Court should alter or amend the judgment. *See Bordelon v. Chicago Sch. Reform Bed. Of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (permitting the court to alter or amend a judgment when the movant brings to the court's attention a manifest error of law).

The Illinois Court of Claims possesses exclusive jurisdiction over all tort claims brought against the State of Illinois or its agencies. *See* 745 ILCS 5/1; 705 ILCS 505/8(d); *Nelson v. Miller*, 570 F.3d 868, 885 (7th Cir. 2009).

The State Lawsuit Immunity Act provides that the State of Illinois "shall not be made a defendant or party in any court" except as provided in certain acts, including the Court of Claims Act. 745 ILCS 5/1. The Court of Claims Act provides the Court of Claims with exclusive jurisdiction over "[a]ll claims against the State for damages sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit…." 705 ILCS 505/8(d). Accordingly, Plaintiff cannot pursue state law tort claims against State employees in federal court. *Benning v. Bd. Of Regents of Regent Univ.*, 928 F.2d 775, 777 (7th Cir. 1991) ("Under the *Erie* doctrine, state rules of immunity govern actions in federal court alleging violations of state law.").

An action is against the State and not against a named individual when:

> (1) [T]here are no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) … the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001); *see also Jones v. Hileman*, 2008 WL 4482891, *3 (S.D. Ill. Sept. 30, 2008) (holding state-law wrongful death claim against Illinois state police officers brought alongside Section 1983 deliberate indifference claim was barred by

state sovereign immunity as the wrongful death claim was not dependent on the constitutional claim because the two claims offered alternate theories of culpability).

Here, Plaintiff pleaded an Illinois state law claim for "willful and wanton conduct" in addition to his constitutional Section 1983 claims. (Doc. 50.) However, Plaintiff pleaded his "willful and wanton conduct" claim out of the jurisdiction of this Court by admitting all of the defendants acted within the scope of their employment. *See Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 650 (7th Cir.2006) ("[A] party may plead itself out of court by … including factual allegations that establish an impenetrable defense to its claims…."); *Jackson v. Marion County,* 66 F.3d 151, 153–54 (7th Cir.1995) ("[A]dmission can of course admit the admitter to the exit from the federal courthouse…. We have expressed our puzzlement that lawyers insist on risking dismissal by filing prolix complaints."). Specifically, Plaintiff pleaded a claim for indemnification and stated "Defendants Berry, Qualls, Snell, Purdom, …, and Lang are or were employees of the IDOC and acted within the scope of their employment in committing the misconduct [all of Plaintiff's other claims] described above." (Doc. 50, ¶ 99.) While this admission does not affect Plaintiff's constitutional Section 1983 claims, it does create a conflict with Plaintiff's state law claim of "willful and wanton conduct" because if the defendants acted within the scope of their employment, the claim is actually against the State of Illinois and would, therefore, be barred by state sovereign immunity. *Benning*, 928 F.2d at 777.

For example, as discussed during trial, Aimee Lang's job duties and responsibilities included evaluating offenders for injuries and offering certain pre-approved medications. As noted above, Plaintiff pleaded that Aimee Lang—and all the defendants—acted within the scope of her employment, thereby depriving the Court of jurisdiction over the Plaintiff's willful and wanton conduct claim. This conclusion is also supported by the facts of the case where Aimee Lang was

necessarily acting within the scope of her employment in evaluating Plaintiff for injuries. *See Estate of Crandall*, 2015 WL at *9 ("Checking inmates housed in segregation once every thirty minutes fell within the scope of [a correctional officer's] duties, and the manner in which he carried out that responsibility falls within the scope of his authority as an employee of the Department of Corrections…. For that reason, the Court concludes that [the correctional officer] acted within the scope of his employment when he failed to check on [the plaintiff's] cell."); *Ingram*, 2011 WL 1519623 at *5 ("[I]t cannot seriously be disputed that it was within the scope of Rednour's authority as the warden of Menard to supervise, train, and direct IDOC personnel at Menard, to place prisoners at Menard in isolation, to monitor the condition of prisoners in isolation, to see that such prisoners are afforded adequate medical care, and so forth…."). Since Plaintiff's willful and wanton conduct claim is barred by state sovereign immunity, submitting this claim to the jury constitutes a manifest error of law. Accordingly, the Court should alter or amend the judgment as it concerns Plaintiff's willful and wanton conduct claim so that the claim is in Defendants' favor or otherwise alter or amend the judgment to reflect that the claim is dismissed.

### D. An Evidentiary Error Concerning the Testimony of Clayborn Smith Denied Defendants a Fair Trial

Rule 59(a) provides for a new trial when there is a significant chance that evidentiary errors at trial affected the jury's verdict. *Barber v. City of Chicago*, 725 F.3d 702, 715 (7th Cir. 2013). A new trial is warranted when the cumulative effect of the identified errors deprives a litigant of a fair trial or when the verdict which results is contrary to the manifest weight of the evidence. *Lowe v. Consol. Freightways of Del., Inc.*, 177 F.3d 640, 641 (7th Cir. 1999).

Here, an evidentiary error during the cross-examination of Clayborn Smith deprived Defendants of a fair trial. Clayborn Smith was one of two inmate witnesses to testify on behalf of Plaintiff. During direct examination, Mr. Smith provided details of an attack that he

witnessed in the Menard Correctional Center West Cellhouse. While some details of this attack varied with how Plaintiff and his other inmate witness (Edgar Diaz) testified, Mr. Smith's testimony essentially confirmed Plaintiff's version of events. Repeatedly, during direct and cross examination, Mr. Smith testified that he did not know Plaintiff or Edgar Diaz at the time of the attack—likely in an effort to show that he was not biased by a prior relationship with Plaintiff or Mr. Diaz. Instead Mr. Smith testified that he learned this information from "someone else." During cross-examination, counsel for Defendants questioned who provided Mr. Smith with the names of the individuals and Mr. Smith refused to answer the question. The question was rephrased, which spurred a relevance objection from Counsel for Plaintiff. The Court sustained the objection and surmised Mr. Smith was unlikely to reveal the name(s) of who provided the information for obvious reasons. This constitutes an error that deprived Defendants of a fair trial. Specifically, Defendants should have been permitted to press Mr. Smith on who provided this information and, if Mr. Smith refused, corrective action was necessary.

It is clear Plaintiff considered Mr. Smith to be an essential witness at trial. Counsel for Plaintiff moved for an emergency continuance the first morning of trial due to the failure of the Cook County Sheriff's Office to transport Mr. Smith for the trial. Counsel for Plaintiff also moved for a mistrial during the video testimony of Mr. Smith when the Cook County Sheriff's Office inadvertently failed to remove Mr. Smith's mechanical restraints prior to Mr. Smith beginning his testimony. As an essential witness, Defendants were entitled to probe Mr. Smith's reliability and credibility. Mr. Smith's testimony was based on information he obtained from another person or persons. This directly relates to his reliability and credibility. Further, Mr. Smith's statements were made without foundation and by failing to identify his source of information, Defendants were deprived the ability to object to Mr. Smith's testimony on hearsay grounds. By denying Defendants

the opportunity to learn who provided Mr. Smith with his testimony, Defendants were denied a fair trial. Accordingly, the Court should grant Defendants' Motion and order a new trial.

    **2. Defendants are Entitled to Judgment as a Matter of Law on Plaintiff's Willful and Wanton Conduct Claim (Count 9) Against all Defendants.**

At trial, Defendants moved, in pertinent part, for judgment as a matter of law on Count 9 as it concerned all defendants. The Court entered judgment against Defendants on this claim on August 20, 2018. Accordingly, Defendants timely renew their motion for judgment as a matter of law because Plaintiff's willful and wanton conduct claim is duplicative and results in Plaintiff receiving double recovery for his injuries. For the reasons that follow, the Court should grant Defendants' Motion and enter judgment in their favor as to this claim.

    **A. Legal Standard for Renewed Motion for Judgment as a Matter of Law**

Federal Rule of Civil Procedure 50(b) provides that if the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the movant may file a renewed motion for judgment as a matter of law no later than twenty eight days after the entry of judgment. Fed. R. Civ. P. 50(b).

    **B. Plaintiff's Willful and Wanton Conduct Claim is Duplicative and Should be Dismissed**

Defendants renew their motion for judgment as a matter of law concerning their argument that Plaintiff's willful and wanton conduct claim is duplicative of Plaintiff's prayer for punitive damages. It is well established that a plaintiff cannot recover twice for the same injury. *Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 642 (7th Cir. 2011) ("A judgment that can be read to allow a plaintiff to recover twice for the same injury contains a manifest error of law."). A claim that is duplicative of another claim should be dismissed. *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 744 (7th Cir. 2004). Here, it is uncertain

how Plaintiff's prayer for punitive damage on his constitutional claims is not duplicative of his state law claim for willful and wanton conduct. The jury instructions are shockingly similar. *Compare* (doc. 200, 26–28) *and* (doc. 200, 31). Essentially, punitive damages and Plaintiff's willful and wanton conduct claim allow Plaintiff to recover money for Defendants maliciously or recklessly violating Plaintiff's constitutional rights. Allowing Plaintiff to recover twice for the same conduct, which resulted in the same injury, would constitute a manifest error of law. Accordingly, the Court should grant Defendants' renewed motion for judgment as a matter of law and dismiss Plaintiff's Willful and Wanton Conduct claim (Count 9). In the event the Court denies Defendants' renewed motion for judgment as a matter of law, Defendants request a new trial on damages because it cannot be discerned what damages Plaintiff was awarded for his Willful and Wanton Conduct claim (Count 9). The failure to delineate these damages constitutes a manifest error of law where Defendants cannot ascertain whether Plaintiff received double recovery.

WHEREFORE, for the above and foregoing reasons, Defendants respectfully request this honorable Court grant their post-trial motion and grant them the relief as stated therein.

Respectfully submitted,

NATHAN BERRY, AIMEE LANG, WILLIAM QUALLS, and JUSTIN SNELL,

Defendants,

Jeremy C. Tyrrell, #6321649
Assistant Attorney General        LISA MADIGAN, Illinois Attorney General,
500 South Second Street
Springfield, Illinois 62701           Attorney for Defendants,
(217) 785-4555 Phone
(217) 524-5091 Fax               By: s/Jeremy C. Tyrrell
jtyrrell@atg.state.il.us                Jeremy C. Tyrrell
                                  Assistant Attorney General

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| OSBALDO JOSE-NICOLAS,  )<br>                                        )<br>       Plaintiff,       )<br>                                        )<br>v.                                     )<br>                                        )<br>NATHAN BERRY, et al.,       )<br>                                        )<br>      Defendants.      ) | Case No. 15-cv-964-NJR-DGW |

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 17, 2018, I electronically filed *Memorandum of Law in Support of Defendants' Combined Post-Trial Motion*, with the Clerk of the Court using the CM/ECF system, which will send notification of same to the following:

                    Arthur Loevy:    loevylaw@loevy.com
                       Jon Loevy:    jon@loevy.com
                    Sarah Grady:    sarah@loevy.com
                  Adair Crosley:    adair@loevy.com
        Julie M. Goodwin:    julie@loevy.com

                                      Respectfully submitted,

                                      s/Jeremy C. Tyrrell
                                    Jeremy C. Tyrrell, #6321649
                                    Assistant Attorney General
                                    500 South Second Street
                                    Springfield, Illinois  62701
                                    (217) 785-4555 Phone
                                    (217) 524-5091 Fax
                                    E-Mail: jtyrrell@atg.state.il.us